No. 13,717.

SMITH ET AL. *v.* UNION SAVINGS AND LOAN ASSOCIATION.
(50 P. [2d] 538)

Decided October 7, 1935. Rehearing denied October 28, 1935.

Mr. WM. A. BRYANS, III, for plaintiffs in error.

Mr. MORTIMER STONE, Mr. ALDEN T. HILL, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

DEFENDANT in error, Union Savings and Loan Association, a Wyoming corporation, recovered a judgment of a little over $500 against the Larimer County Abstract Company, a Colorado corporation, and R. T. Smith, its president and manager. The abstract company and Smith ask that the judgment be reversed.

The company had been employed as the association's agent in obtaining applicants for loans by the association. The application of one May Ball was procured by the company, which mailed it to the association's agent at Denver. He in turn transmitted it to one Macdonald, the association's assistant secretary, with headquarters at the home office in Rock Springs, Wyoming.

On a printed form of application supplied by the association, Mrs. Ball, with the assistance of Smith, gave certain information concerning the realty on which the loan was to be secured. The questions and answers therein bearing upon the present controversy are as follows (abbreviations being here replaced by the words for which they admittedly stand): "Are there any street liens or bonds? yes. Unpaid taxes? yes $525.61 includes 1931 payments. Is the property recorded as a homestead? no. Are there any judgments, mechanics' liens, unpaid improvement assessments or other unrecorded debts which may now or hereafter become a lien

prior to this loan? Paving and storm sewer. Balance paving $345.84 storm sewer $90.86.''

The application was duly signed by Mrs. Ball on March 14, 1931. Smith signed as witness. Owing to a flaw which was discovered and later corrected in the title—a suit to quiet title being incidentally instituted and prosecuted to final judgment—the application was not finally approved until about six months later.

A promissory note for $3,000 had been signed by Mrs. Ball (and by a man and wife named Brown, who had a contract to purchase from Mrs. Ball). A deed of trust in favor of the association had been executed by Mrs. Ball to secure that note.

In August, 1932, less than a year after the loan had actually been made, the association proceeded to foreclose the deed of trust, a default having occurred. Sale was had in due course on November 12, 1932, and the property was bid in by the association at $2,500. This left an unpaid balance of more than $1,000, for which a deficiency judgment was entered four days later against Mrs. Hall and the two Browns. These three were all shown by the evidence to be insolvent.

On February 19, 1934, the association commenced an action against Smith and his company to recover $427.62 and interest, claiming this to be the amount of damages to which the association was entitled because of the alleged failure to follow the association's instructions as to the way in which the money loaned should be applied. At a jury trial in the district court, all the evidence being in, and the association having moved for a directed verdict in its favor, the court sustained the motion. A judgment upon the verdict so directed was entered and this is the judgment now before us for review.

The question is therefore whether the trial court, in directing a verdict for the association, was right or wrong.

■ 1. There is no doubt of the absolute honesty and good faith of Smith in all the matters here involved. The

only contention of the association is that the instructions given by the association as principal, to Smith or his company as agent, were not followed. Of course, direction of the verdict in the trial court assumes that there was uncontradicted evidence of the agent's having failed to follow clear and unambiguous instructions, for, if the principal's instructions were reasonably susceptible of two possible interpretations whereof one would justify Smith's conduct and the other not, no liability could attach to the agent. In that event the principal's loss, if any, resulting from the agent's adoption of a reasonable interpretation other than that intended by the principal must be borne by the latter and cannot be shifted to the agent. The correct legal principles governing such a situation are tersely stated by the American Law Institute:

"Except for the execution of instruments under seal or for the performance of transactions required by statute to be authorized in a particular way, authority to do an act may be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." 1 Restatement, Agency, §26 [page 72]. And "if the instructions of the principal are ambiguous, the agent is not liable to the principal for conduct in accordance with a reasonable but erroneous interpretation of orders * * *." 2 Id., §383 *a* [page 851].

■ The principal's instructions in the case at bar were in writing. However, they are not found in a single document, but must be spelled out of the mutual correspondence. It becomes our duty, therefore, to ascertain the legal effect of the documents, for the purpose of determining—as a matter of law—whether the instructions were ambiguous and, if so, whether Smith's interpretation was a reasonable one.

That there are divers inconsistencies, inaccuracies and misapprehensions on the part of the association in its

letters is self-evident. In its letter to Smith under date of March 23, 1931, it said: "The loan application of May Ball has been approved in the sum of $3,000 on condition that she pay the sum of approximately $500.00 on City improvement taxes. Also that the last ½ of 1930 general tax shall be paid * * *."

Mrs. Ball's application, as above quoted, expressly stated that "unpaid taxes" amount to $525.61 including the payment due in 1931, and that there are unpaid balances on "improvement assessments" of $345.84 for paving and $90.86 for a storm sewer. Hence, obviously, the foregoing letter not only is wholly irreconcilable with the facts and figures contained in the application, but might reasonably have been understood as meaning no more than that the association would require payment, on account of combined taxes and assessments, of a sum approximating in the aggregate $500 plus the amount due as the last half of 1930 taxes. It could not have been followed literally under any theory of the case that is now advanced on behalf of the association. If the $500 should refer solely to improvement assessments, then the second half of the above mentioned 1930 taxes and the original bidding price of $114.90 (not to mention the later additions necessarily made by the statutes of Colorado, including all taxes subsequently falling due on the premises sold), which price, as the record shows, was known to the association to be a lien arising out of the tax sale for taxes of 1927, would together clearly carry the total lien much above the amount of the $551.60 check transmitted in the letter of September 22nd as applicable to assessments and taxes.

The confusion in the association's March letter having been as hereinabove stated, it is not strange that Smith in his answer under date of April 9, 1931, perhaps by way of tactfully presenting the situation as viewed from the Colorado standpoint, had stated his understanding of the association's instructions by saying: "If you are willing to go ahead with the loan * * * you may

send the check to me and perhaps better include my name * * * as I am to see that the other loan is paid and properly released, as well as taking care of all the unpaid taxes, including all of the 1930 general taxes and *all special assessments that fall due during the year 1931.*'' [Italics here and below are ours.] No criticism or other comment was made by the association on this plain expression of Smith's interpretation of the association's directions.

Not only was Smith's understanding voiced in the just quoted passage of his specific answer to the association's March letter, but, before the latter was sent by the association, Smith had written to Frear, the Denver agent of the association: ''The taxes will all be paid, including the 1930 general taxes and *all improvement taxes that will be due to January 1st of next year* [1932].''

As in the first instance, so in the second, the association did not see fit to correct Smith's impression as to what was really meant to be paid off in the matter of taxes and assessments. It is clear that Smith's statements are in accord with Colorado business practice relative to removing liens. It would be unusual to require that deferred installments of improvement assessments, which have not yet fallen due, be paid off in advance.

The Smith letters above referred to were written before commencement of the six months' delay occasioned by the flaw in the title. This period having ended, correspondence was resumed. Under date of September 12, 1931, Smith transmitted the report of the association attorney, bearing the same date, in which the attorney showed the state of the title and the existence of the prior deed of trust and the delinquent tax sale of $114.90, adding: ''I have not investigated as to current taxes or assessments * * *.'' In the letter of transmittal Smith wrote: ''As you remember there is a loan to take up and about $550.00 in taxes to pay, which the writer will see are properly taken care of * * *.'' Five days thereafter Smith wrote: ''Upon receipt of your check I will

take up the old loan, pay all taxes *to date* \* \* \*."
After another five days came word from the association
as follows: "We are enclosing checks \* \* \* in the
sum of $2448.40 and check in favor of the Treasurer,
City and County of Larimer in the sum of $551.60 which
should pay in full the City improvement taxes and also
pay the delinquent taxes in the sum of $114.90 \* \* \*.
We would also want a tax receipt for the year 1930
because these taxes are about due and should be paid in
full."

Of course it would be a violent presumption to sup-
pose that the association could possibly think, after the
Ball application and the various Smith letters and the
report of its attorney came before it, that $551.60 would
pay off the improvement assessments, due and to become
due, and the redemption amount accrued on the delin-
quent tax sale purchase price, with its penalties, costs
and interest, together with the second half of the taxes of
1930, and would leave nothing in the shape of a lien for
taxes or assessments. The laws of Colorado, which all
parties were charged with knowing, made it obligatory
on the one redeeming from the tax sale to pay not only
the sum bid for the property, with the accrued penalties,
costs, and interest for about three years, but in addition
the much larger aggregate of subsequent taxes for the
years following 1927.

The conclusion is irresistible that the instructions given
Smith by the association were ambiguous, and that
Smith's interpretation of them was reasonable. Any
other conclusion would be utterly inconsistent with the
evidence before us. This includes the redemption cer-
tificate and the receipts for the improvement assessment
payments. These documents speak for themselves. They
show that the amounts paid out by Smith comprise
$421.72 for redemption from tax sale (including the next
three years' taxes), and $121.73 for a single installment
of the paving assessment, and $14.51 for but one install-
ment of the storm sewer assessment, a total of $557.96.

It is obvious that these payments included only the current installment of each improvement assessment in question. The payments thus conform to Smith's interpretation.

■ 2. The foregoing views render it unnecessary for us to consider the further contention that, irrespective of the questions of ambiguity in the association's instructions and reasonableness of Smith's interpretation, the association has ratified Smith's conduct as its agent and so cannot recover.

It follows from our discussion that the district court, in directing the jury to render a verdict in favor of the association, committed reversible error. The unrefuted evidence entitled Smith and his company to judgment in their favor.

The judgment of the lower court is reversed, and the case remanded with directions to enter judgment for the plaintiffs in error, the costs of both courts to be taxed against the defendant in error association.

Judgment reversed with directions.

Mr. Chief Justice Butler and Mr. Justice Holland concur.